UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES H. HERNANDEZ, JR.,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>DARRELL WHEELER, LT. HARRIS, LT. WIENS, SGT. CABLE, SGT. HARRISON, AND OFFICER VAN PEIT,<br><br>　　　　　　　　Defendants. | Case No. 2:10-cv-00084-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Defendants' Motion for Summary Judgment. (Dkt. 32.) All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 29.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Having fully reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court will decide this matter on the written motions, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

**MEMORANDUM DECISION AND ORDER - 1**

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 1.    Background

At the time of the incidents at issue, Plaintiff and his wife, Christy Boen, were

pretrial detainees in the Bonner County Jail. The Initial Review Order in this case

authorized Plaintiff to proceed on his claim that jail officials violated his First

Amendment rights by refusing to permit husband-wife inmate-to-inmate written

correspondence, and by retaliating against him for attempting to assert his right to

correspond, against the following Defendants: Darrell Wheeler, Sergeant Harris, Sergeant

Cable, Officer Van Pelt, and Lieutenant Wiens. (Dkt. 7.) Plaintiff was not authorized to

proceed on his claims of mail censorship, equal protection, or access to the courts.

Defendants now assert entitlement to summary judgment on the remaining First

Amendment claims.

### 2.    Standard of Law Governing Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or

defense, "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of

summary judgment "is to isolate and dispose of factually unsupported claims . . . ."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural

shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or

defenses [can] be isolated and prevented from going to trial with the attendant

unwarranted consumption of public and private resources." *Id*. at 327.

**MEMORANDUM DECISION AND ORDER - 2**

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). The requirement is that there be no genuine dispute as to any *material* fact. "Material facts are those that may affect the outcome of the case." *See id.* at 248. The moving party is entitled to summary judgment if that party shows that each material issue of fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence

**MEMORANDUM DECISION AND ORDER - 3**

must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials– including the facts considered undisputed–show that the movant is entitled to it."

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To have a claim under § 1983, a plaintiff must show the existence of four elements: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

**MEMORANDUM DECISION AND ORDER - 4**

3.    **First Amendment Mail Claims**

Plaintiff has been permitted to pursue his First Amendment claim that jail officials'
complete prohibition of correspondence between husband-and-wife pretrial detainees is
an exaggerated response to the security issues posed by permitting such correspondence.
To the extent that Plaintiff also has presented his arguments as Fourteenth Amendment
substantive due process claims, the Court has considered the facts under that theory,
because Plaintiff's complaint could be amended to assert such a cause of action.

A.    *Standard of Law*

Inmates retain the First Amendment right to send and receive mail. *See*
*Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Pretrial detainees have slightly broader
rights than convicted inmates. *See, e.g., Mauro v. Arpaio*, 188 F.3d 1054, 1059 n.1 (9th
Cir. 1999) ("a pretrial detainee may assert his status as a shield against intrusive practices
aimed solely at rehabilitation but not against practices aimed at security and discipline").

In *Turner v. Safley*, 482 U.S. 78 (1987), the United States Supreme Court held that
restrictions on inmate-to-inmate communications pass constitutional muster only if the
restrictions are reasonably related to legitimate and neutral governmental objectives,
based on a four-factor test. *Id*. at 89. The prisoners in *Turner v. Safley* challenged the
regulation that prohibited all inmate correspondence between inmates at different
facilities, where the only exceptions to the regulation were for correspondence (1)
between "immediate family members who are inmates in other correctional institutions";
(2) between inmates "concerning legal matters"; and (3) between inmates where "the

**MEMORANDUM DECISION AND ORDER - 5**

classification/treatment team of each inmate deems it in the best interest of the parties involved." *Id.*

In *Turner*, the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. The *Turner* Court identified four factors to consider when determining whether a regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether the prison has "ready alternatives" to the restrictive regulation available at a "de minimis cost," which "may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." 482 U.S. at 89-93 (internal quotation marks omitted).

The United States Supreme Court has opined that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). Moreover, "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* Because "'[s]uch

**MEMORANDUM DECISION AND ORDER - 6**

considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" *Id*. at 547-48 (quoting *Pell v. Procunier*, 417 U.S. 817, 827 (1974)).

The *Turner* analysis applies to pretrial detainees. *See Bull v. City and County of San Francisco*, 595 F.3d 964 (9th Cir. 2010). The United States Court of Appeals for the Ninth Circuit has clarified that, in applying the *Turner* test to pretrial detainees–who may not be punished–the legitimate penological interests in security and safety apply, but "the penological interests in punishment and rehabilitation may not be applicable outside the prison setting." *Id*. at 974. n. 10.

**B.**    ***Undisputed Material Facts***

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's version of facts, insofar as that version is not contradicted by clear documentary evidence in the record.

At the time period in question, the jail had policies and procedures in place governing inmate-to-inmate mail, all incoming mail, and all outgoing mail. The stated purpose behind the policies was to maintain jail security. (Affidavit of Sheriff Daryl Wheeler and Exhibits, Dkt. 32-3; Affidavit of Jail Commander Doug Harris and Exhibits, Dkt. 32-4.)

MEMORANDUM DECISION AND ORDER - 7

Specifically, the Bonner County Jail policy on inmate correspondence provided:

> Written correspondence between inmates being held at the Bonner County Detention Facility is normally prohibited. Such authorization may be granted, for good cause, under the following conditions:
>
> 1. When the inmates are, and were at the time of their commitment, immediate family members such as spouse, parent, child, or sibling. Authorization for correspondence between inmates may not be granted if such contact has been prohibited for investigative purposes or court order.
>
> 2. Inmates may be authorized to correspond with other inmates concerning legal matters in which they are co-parties and not represented by counsel. Inmates corresponding with other inmates concerning legal matters do so with the understanding that this mail is not considered privileged mail and may be opened, inspected and read.

(Exhibit A to Harris Aff., Dkt. 32-4, p. 13.)

Jail Commander Doug Harris participated in jail training courses that outlined the risks of inmate-to-inmate correspondence, including: "the communication of escape plans between inmates; coordinating the movement of contraband into and out of the correctional/detention facility; coordinating violent acts against corrections staff and/or other inmates; developing and maintaining informal organizations, such as gangs, that pose a threat to the safety and security of corrections staff and/or other inmates; communicating the layout of the detention facility; communicating the number of detention deputies on shift at a given time; and tracking the movement and schedule of corrections staff and/or other inmates." (Harris Aff. and Exhibits, Dkt. 32-4.)

The policy at issue was found in the Inmate Handbook, which was available to

Plaintiff in his pod, and Plaintiff was also advised by staff of this policy. (Wheeler Aff. and Exhibits, Dkt. 32-3; Harris Aff. and Exhibits, Dkt. 32-4.) In addition, when Plaintiff and his wife, Christy Boen, were booked into the jail on federal charges, they were told in person that inmate-to-inmate correspondence was prohibited.

Plaintiff first requested permission to write to his wife on April 29, 2009, stating: I was told in court today that I could write my wife Christy Boen, [illegible][.] She is an inmate here[.] Could you please approve or contact US Marshal[] or court." (Dkt. 32-4, p. 23.) The written response on the jail form was, "'Correct. Cannot discuss their case. Mail must be screen[ed] as usual,'" signed [illegible signature], USMS." (*Id*.) Plaintiff has submitted a minute entry from the federal court showing: "At this time, the Court will not impose a no contact order between the Defendants while jointly incarcerated." (Dkt. 37, p. 20.)[1]

After Plaintiff tried through legitimate channels to obtain permission to correspond with his wife, and was denied, both Plaintiff and his wife attempted to communicate in

---

[1] This Court presided over Plaintiff's preliminary hearings in federal court, and the statement that is quoted is the Court's own statement. The Court has sua sponte considered whether recusal in this case is required, and has concluded that it is not required. Title 28 U.S.C. § 455(b)(1) provides that a judge or magistrate must recuse herself "[w]here [s]he has ... personal knowledge of disputed evidentiary facts concerning the proceeding." However, several courts have held that "[f]acts learned by a judge in his or her judicial capacity regarding the parties before the court, whether learned in the same or a related proceeding, cannot be the basis for disqualification" under 28 U.S.C. § 455(b)(1). *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin*, 991 F.2d 1249, 1255-56 (7th Cir. 1993); *Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437 (2d Cir. 2005). In addition, here, the fact that the federal court did not impose a "no contact" order is not disputed.

**MEMORANDUM DECISION AND ORDER - 9**

writing with each other by leaving notes hidden under the door to the outdoor recreation area. On June 5, 2009, Deputy Van Pelt found a note in the door of the outdoor recreation area. It said, "I love you so much Christy." Deputy Van Pelt identified the sender as Plaintiff, and the intended receiver as his wife, both inmates.(Dkt. 32-4, p. 27.) That same day, Deputy Petit confiscated a number of letters from Plaintiff to Boen that had been written at the jail. (*Id*., p. 28.) (Defendants have provided no insight into the content of the other letters.) Plaintiff received 30 days of lockdown, with 20 days suspended, for violating jail policies. (*Id*.)

On July 9, 2009, Plaintiff wrote a kite, asking to be moved to the Shoshone County Jail or another facility so that he could correspond with his wife, citing the fact that he had been in trouble for writing and trying to talk to her in the jail. He states: "We are losing our child to the Department of Social and Health Services Div. of Children and Family Services. This is cruel punishment and A.C.L.U. Idaho Jail stand[ard] says I have the right to be able to write my wife." (Dkt. 32-4, p. 33.) The response was, "Forwarded to US Marshals." (*Id*.) Plaintiff wrote again, citing Idaho Jail Standards, Chapter 14.03. His request was denied. (*Id.*, p. 34.) Idaho Minimum Jail Standards Chapter 14.03 contains the same language, with the same exceptions for family members and pro se joint inmate litigation, as found in the jail's policy.[2]

Sheriff Doug Harris states that Plaintiff's actions in repeatedly requesting a

---

[2] *See* Idaho Sheriff's Association Minimum Jail Standards, revised December 2003, found at http://static.nicic.gov/Library/019370.pdf.

**MEMORANDUM DECISION AND ORDER - 10**

prohibited action and then secretly writing to his wife caused disruption to the management of the jail because Plaintiff and his wife had to be constantly monitored, and that Plaintiff's actions created a threat to the safety and security of the jail, its staff, and other inmates. (*Id.*)

During the time period when both husband and wife were housed at the jail, Plaintiff was permitted to correspond by mail with non-incarcerated persons. Plaintiff was permitted to write to his wife as soon as she was placed in a Seattle, Washington facility to serve her incarceration time. (Harris Aff., Dkt. 32-4.)

### C.    *Discussion of Turner Test*

The *Turner v. Safley* case established that restrictions on inmate-to-inmate communications are constitutional only if the restrictions are reasonably related to legitimate and neutral governmental objectives, based on a four-factor test. *Id.* at 89. The Court concludes, that, under the facts of this case, Plaintiff has not met his burden to come forward with sufficient evidence to show that Defendants violated Plaintiff's constitutional rights under the First or Fourteenth Amendment when they refused to allow him to correspond with his wife while they were both pretrial detainees. While the second *Turner* factor strongly favors Plaintiff, the first, third and fourth factors favor the jail, as the Court discusses in more detail below.

Even though the *Turner* opinion can be read to *imply* that husband-and-wife inmates have a right to correspond– because the prison policy analyzed in *Turner* provided that such correspondence was an exception to the general rule of no

**MEMORANDUM DECISION AND ORDER - 11**

correspondence between inmates–it is important to note that husband-and-wife correspondence was not particularly at issue in *Turner*, and, thus, the United States Supreme Court did not address whether it was a right. As a result, it is not known whether the narrowing of the *Turner* policy to allow husband-wife correspondence aided in the prison being able to meet the four factors, or whether it was simply irrelevant. Case law from lower federal courts following *Turner* seems to recognize a right of husband-and-wife inmates to correspond that arises from *Turner*, perhaps simply because the policy scrutinized in *Turner* did permit correspondence between immediate family members, although, again, it is important to note that family correspondence was not at issue in *Turner*.[3]

### (1)    First Factor

Affidavits of Bonner County Jail officials outlining the particular security concerns that arise when inmates are permitted to correspond with one another in the same prison demonstrate that the first *Turner* factor is met–there is a rational connection between the prison regulation and a legitimate governmental interest. These are the same security interests cited by the majority in *Turner*. The dissenting justices in *Turner* argued that

---

[3] Of those cases following *Turner*, the right of couples to correspond has been narrowly construed as applying only to married couples, and it has not been extended to common-law couples or formerly-married couples, finding the security concerns set forth in *Turner* enough to deny that privilege to nonmarried couples. *See Maldonaldo v. Bruce*, 2008 WL 5435315 (D. Mont. 2008) (common law marriage; previously-approved letter writing between two federal prisons suspended when letters were used to set up dates or letter-writing between female and male prisons (involving third-party inmates) and because there was no proof that of marriage); *Murphy v. Altizer*, 2009 WL 4122546 (S.D. W. Va. 2009) (formerly married inmates); *Oliver v. Lyons*, 1989 WL 48405 (E.D. Pa. 1989) (mentions common law wife, but relies on prison prohibition and *Turner*).

**MEMORANDUM DECISION AND ORDER - 12**

these interests were mere generalities, and that more fact-specific interests should have been supplied by prison officials, but the majority rejected that position in favor of deference to prison authorities. Thus, even though Defendants did not produce fact- or facility-specific information to support their legitimate governmental interests, the Court cannot require more, in light of the manner in which the four factors were actually applied in *Turner*, and especially where the factors here nearly mirror those that were set forth and found acceptable in *Turner*.

### (2) Second Factor

The second factor is whether alternative means of exercising the right remained open. Plaintiff was free to correspond with friends, family, his attorney, and the rest of the outside world, but was restricted from corresponding with all inmates housed in the same facility, including his wife, who was Plaintiff's co-defendant. The Court rejects Defendants' interpretation of this factor–that it is sufficient that Plaintiff could correspond with everyone except his wife. Plaintiff mentions that he and his wife had recently had a baby, and that the baby was the subject of parental rights termination proceedings, but he and his wife could not communicate about that fundamentally important action. In this instance, or even in an instance where a husband  and wife had joint property or debts that needed attention while they both were incarcerated, communication with any third party cannot be equated to communication with a spouse.

The *Turner* Court cited to *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119 (1977), to explain the importance of the second factor. In *Jones*, the issue

**MEMORANDUM DECISION AND ORDER - 13**

was whether the prison could refuse to deliver bulk mailings from the prisoner labor

union without violating the First Amendment. The ban did not extend to individual

mailings from the union to individual inmates. 433 U.S. at 131 n.8. The court determined

that, "[s]ince other avenues of outside informational flow by the Union remain available,

the prohibition of bulk mailing, reasonable in the absence of First Amendment

considerations, remains reasonable." 433 U.S. at 131.

That conclusion was based upon the following reasoning:

> The State has not hampered the ability of prison inmates to
> communicate their grievances to correctional officials. In banning Union
> solicitation or organization, appellants have merely affected one of several
> ways in which inmates may voice their complaints to, and seek relief, from
> prison officials. There exists an inmate grievance procedure through which
> correctional officials are informed about complaints concerning prison
> conditions, and through which remedial action may be secured. See
> Affidavit of Director Edwards, App. 127. With this presumably effective
> path available for the transmission of grievances, the fact that the Union's
> grievance procedures might be more "desirable" does not convert the
> prohibitory regulations into unconstitutional acts.

433 U.S. at 131 n.6.

Here, Plaintiff had no alternative means of communicating with his spouse.

Accordingly, for these reasons, the second *Turner* factor weighs heavily in favor of

Plaintiff.

### (3)    Third Factor

The third *Turner* factor is an assessment of the impact that accommodation of the

right will have on guards, other inmates, and on the allocation of prison resources

generally. As to the third factor, the *Turner* Court again turned to *Jones* to explain its

**MEMORANDUM DECISION AND ORDER - 14**

meaning, reasoning that, "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner*, 482 U.S. at 90, comparing *Jones*, 433 U.S. at 132-133.

In assessing the third *Turner* factor, the Court finds that additional management resources were needed at the Bonner County Jail to monitor the correspondence and interaction of Plaintiff and his wife. While male inmates could communicate (at least verbally) with male inmates, and female inmates with other females, in general males and females at the jail were separated. No correspondence between prisoners was allowed, and, thus, correspondence between Plaintiff and his wife would need to be carefully screened.

Defendants do not state how many immediate-family inmates it housed, to show how large a burden monitoring such correspondence would be. The jail suggests that "the man power, time, money and training dedicated to reading, deciphering and evaluating threats posed by inmate correspondence would increase substantially." (Harris Aff. ¶ 26.) The prison did not bring forward facts showing how heavily it reads or screens regular mail, and whether monitoring of the mail between Plaintiff and his wife would have added greatly or minimally to their existing burden to screen regular incoming and outgoing mail. However, what the jail has provided is sufficient here, because, as noted above, the *Turner* majority rejected the *Turner* dissenting justices' call for detailed data to support the allegation that monitoring was an extra burden. Thus, the Bonner County

**MEMORANDUM DECISION AND ORDER - 15**

Detention officers cannot be required to engage in such a detailed analysis in this case.

### (4)    Fourth Factor

The fourth *Turner* factor is whether there is an absence of ready alternatives. The absence of a ready alternative tends to show the reasonableness of a prison regulation. 482 U.S. at 90. Conversely, "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id.* "[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.*

Here, the jail could have allowed Plaintiff and his wife to send their correspondence to one another through the regular U.S. Postal Service, so that it could be monitored with the other mail. The jail could have allowed Plaintiff and his wife to have monitored personal visitation in lieu of written correspondence. The jail could have permitted Plaintiff and his wife to meet together with their lawyers from time to time. These are a few alternatives that suggest the total ban on spousal correspondence was exaggerated; however, the Court is careful to note that it must defer to jail officials on whether these alternatives would pose undue security risks or require excessive monitoring by jail employees. In addition, these alternatives clearly would require additional staff time, calling into question whether they are "easy" alternatives. Hence, this factor weighs slightly in favor of the jail.

**MEMORANDUM DECISION AND ORDER - 16**

### D.      Conclusion of *Turner* Analysis

The first factor weighs heavily in favor of the jail: the prohibition on inmate-to-

inmate correspondence is reasonably related to valid corrections goals. The second factor

weighs heavily in favor of Plaintiff: there is no other type of correspondence that can take

the place of communication between spouses, especially when parental termination

proceedings are immediately at issue.

The third and fourth factors weigh slightly in favor of the jail. The ban logically

advances the goals of institutional security and safety identified by jail officials, and it is

not clearly an exaggerated response to those objectives. Accordingly, the regulation did

not unconstitutionally abridge the First Amendment rights of Plaintiff, and Defendants are

entitled to summary judgment.

### E.      *Qualified Immunity Standard of Law*

Alternatively, the Court considers Defendants' qualified immunity defense, and

concludes that qualified immunity applies, because the law governing Plaintiff's claim is

not clearly established. In Section 1983 actions, the doctrine of qualified immunity

protects state officials from personal liability for on-the-job conduct so long as the

conduct is objectively reasonable and does not violate clearly-established federal rights.

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). A qualified immunity

analysis consists of two prongs: (1) whether the facts as alleged by plaintiff establish a

violation of a constitutional right, and (2) whether that right was clearly established given

the state of the law at the time of the alleged misconduct. *Pearson v. Callahan*, 129 S.Ct.

**MEMORANDUM DECISION AND ORDER - 17**

808, 815-16 (2009), citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 818. The qualified immunity inquiry is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510, 514 (1994).

As to the first prong, the court considers whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendants'] conduct violated a constitutional right." *Saucier*, 533 U.S. at 201.

As to the second prong–whether the law was clearly established– such inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. The Court must consider the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 129 S.Ct. at 822, quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999). If the public official can demonstrate he did not know, nor should he have known, the relevant legal standard, then qualified immunity applies. *Harlow*, 457 U.S. at 819.

To determine whether a party's rights were clearly established, the Court first looks to United States Supreme Court and Ninth Circuit precedent; it may also look to decisions of "sister Circuits, district courts, and state courts." *Sorrels v. McKee*, 290 F.3d 965, 970 (9th Cir. 2002). In addition, "it is not necessary that the alleged acts have been previously held unconstitutional, as long as the unlawfulness of defendants' actions was

**MEMORANDUM DECISION AND ORDER - 18**

apparent in light of preexisting law." *Id.* (internal citations and punctuation alterations omitted).

### F.    Discussion of Qualified Immunity re: the Mail Claim

Plaintiff has failed to demonstrate that the right of husband-and-wife inmates to correspond with each other while they are incarcerated in the same facility or same correctional system was clearly established in the law at the time jail officials refused to allow the correspondence. Neither *Turner* nor any other case of precedential value clearly establishes the right to engage in husband-wife inmate-to-inmate communications in the same facility. Therefore, a reasonable officer in Defendants' place would not feel compelled by the law to grant Plaintiff's request.

Plaintiff offers no legitimate case holdings to support his position that the law was clearly established at the time his request was denied. He cites to *Berch v. Stahl*, 373 F.Supp. 412, 424 (W.D.N.C. 1974), for the proposition that "[p]retrial detainees have a right to communicate with loved ones independent of their right to communicate with the courts." However, not only did that court stretch to support such a holding, the case is from the pre-*Turner* era.

The reasoning of *Berch* is aimed at an admirable outcome, but does not aid Plaintiff in showing that qualified immunity should not apply here:

> The defendants' interference with communication between plaintiff Berch and his wife may also be unconstitutional as an infringement of rights attached to the marital state. The Supreme Court has pointed out that there are 'fundamental' rights of 'personal privacy' attached 'to activities relating to marriage' and to 'family relationships.' *Roe v. Wade*, 410 U.S. 113,

**MEMORANDUM DECISION AND ORDER - 19**

152-153, 93 S.Ct. 705, 35 L.Ed.2d 147 152-153, 93 S.Ct. 705, 35 L.Ed.2d
147 U.S. 1, 12, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), and *Prince v.
Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944). *See
also Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510
(1965).

> Though *Griswold* and *Roe* dealt with physical aspects of the
> marriage relationship, the emotional side can not be overlooked; there is,
> still today, a truth in the poet's assertion that 'stone walls do not a prison
> make' so long as the prisoner retains contact with loved ones outside the
> walls.

> * * * *

> Totally independent, therefore, of a prisoner's right to communicate
> with courts is his right to communicate with loved ones, especially his wife.
> The state can not restrict that right short of the demonstration of a
> compelling interest–an interest it should hardly be necessary to add–wholly
> lacking in this case. Indeed, since the hope of rehabilitation depends at least
> in part on a prisoner's development and maintenance of affirmative social
> relationships, there would appear to be a significant state interest in favor of
> encouraging the strengthening of family ties.

*Id*. at 424-25.

*Berch* is not a case of precedential value for the Bonner County jailors, it stretches

to find a legal basis upon which to rest its decision, and it does not cite to other cases that

clearly would have governed the outcome of Plaintiff's issue. At most, *Berch* shows that

the law is undergoing development, not that it is clearly established. Even the *Turner* case

did not address inmate-to-inmate correspondence between husband and wife, nor did it

clearly address intra-jail correspondence, instead focusing on inter-facility

correspondence.

Another recent district court case recognized a general right to correspond and a

**MEMORANDUM DECISION AND ORDER - 20**

right to pursue familial relationships, but it applied *Turner* to conclude that prison officials did not violate an incarcerated wife's constitutional rights by not allowing her to correspond with her incarcerated husband until she earned that privilege. *See Dunford v. New River Valley Regional Jail*, 2010 WL 438246 (W.D. Va. 2010).[4] This case illustrates that case law did not put Defendants on notice that they should have known that their decision was improper; if Defendants' actions can be construed as illegal, they were not obviously illegal. For the foregoing reasons, the Court concludes that Defendants are entitled to qualified immunity on the mail claim. The Court now turns to the retaliation claim.

**4.     First Amendment Retaliation Claim**

Plaintiff alleges that, when he attempted to assert his right to correspond with his inmate wife, prison officials retaliated against him. The Initial Review Order noted that Plaintiff's allegations stated a colorable retaliation claim under the First Amendment, but that he would have to overcome the hurdle that the correspondence restrictions did not reasonably advance a legitimate correctional goal.

**A.     *Standard of Law***

A retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, . . . that such action (4) chilled the inmate's exercise of his First Amendment

---

[4] This 2010 case was decided after Plaintiff's 2009 requests to correspond with his wife in the Bonner County Jail, and it is offered for illustrative purposes only to demonstrate the unsettled nature of the law.

**MEMORANDUM DECISION AND ORDER - 21**

rights, and (5) the action did not reasonably advance a legitimate correctional goal."
*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a
"chilling effect on First Amendment rights" is enough to state an injury, *Gomez v.
Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation"
are insufficient to state a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th
Cir. 1985). "A prisoner suing prison officials under section 1983 for retaliation must
allege that he was retaliated against for exercising his constitutional rights and that the
retaliatory action does not advance legitimate penological goals, such as preserving
institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir.
1994) (per curiam); *see also Turner v. Safley*, 482 U.S. at 89 ("[W]hen a prison regulation
impinges on inmates' constitutional rights, the regulation is valid if it is reasonably
related to legitimate penological interests."). While "timing can be properly considered as
circumstantial evidence of retaliatory intent," there must generally be something more
than simply timing to support an inference of retaliatory intent. *Pratt v. Rowland*, 65 F.3d
802, 808 (9th Cir. 1995).

## B.    *Undisputed Material Facts*

The facts set forth above are those that underlie the retaliation claim and will not
be repeated here.

## C.    *Discussion*

As discussed above, Defendants stood upon the general jail policy that inmate-to-
inmate correspondence was prohibited for legitimate security reasons. Defendants did not

**MEMORANDUM DECISION AND ORDER - 22**

look beyond the general policy to the written exception *contained within* the policy–that correspondence between immediate family members can be approved "for good cause."

Plaintiff has provided insufficient facts to show that Defendants acted with an ill motive in response to Plaintiff's requests for permission to correspond with his wife, rather than that they simply acted in accordance with the general jail policy. When Plaintiff actually was punished regarding the written correspondence, it was for the illicit correspondence that was found under the recreation area door.

For these reasons, Plaintiff has failed to show that the actions of Defendants did not reasonably advance a legitimate correctional goal. Accordingly, Defendants are entitled to summary judgment on the merits of the retaliation claim.

**5.     Amendment**

Plaintiff also wishes to add Officers Alt and Parkinson to his lawsuit. Plaintiff's grounds are: "On March 2, 2010, his attorney came to see [me,] Kailey Moran. Said that Rollie Watson my wife's attorney would not return her calls I asked Officer Parkinson to tell Christy to call my attorney. He told me no and to ask acting Sgt. Alt. also denied me, then Sgt. Cable came in and told me that they don't pass notes [sic]."

Plaintiff also wrote a kite that explained: "I need to get a message to my wife inmate Christy Boen Hernandez needs to call my attorney Kailey Morgan at 509-624-7606. My attorney has been try to get a hold of her attorney but won't return her calls. (Dkt. 32-4, p. 41.) The jail's response was: "Go through your attorneys or write to them. We can't give out messages." (*Id.*)

**MEMORANDUM DECISION AND ORDER - 23**

As set forth above, the jail policy generally prohibited inmate-to-inmate correspondence. Suggesting that the attorneys correspond with one another was appropriate under the policy. Attorneys are subject to ethical rules and can be subjected to additional court-imposed rules in particular cases when it is shown that they are not adequately communicating with their clients. Thus, breaking jail rules was not the only solution to this problem. Plaintiff has not come forward with any evidence showing that these new officers would not be entitled to qualified immunity on the mail claim, or that there was not a legitimate penological reason for their decision as to the retaliation claim. Thus, amendment would be futile, and the request will be denied.

## ORDER

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 32) is GRANTED. Plaintiff's request to amend his complaint, contained in his Response, is DENIED. The Complaint is DISMISSED with prejudice.



DATED: January 10, 2013

Honorable Candy W. Dale
United States Magistrate Judge